```
                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                       ALEXANDRIA DIVISION


  KRISTINA GLINES,                  :
                                    :
              Plaintiff,            :   Civil Action
                                    :   No. 1:25-cv-00831-MSN-LRV
              v.                    :
                                    :   August 22, 2025
  DEPARTMENT OF DEFENSE,            :   10:44 a.m. - 11:13 a.m.
  et al.                            :
                                    :
              Defendant.            :
                                    :
  ..............................:
```

                    TRANSCRIPT OF MOTION HEARING
        BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          THE SANDER GROUP PLLC
                            Robert J. Sander, Esquire
                            6618 Saint Mark Court
                            Alexandria, VA 22306

For the Defendant:          UNITED STATES ATTORNEY'S OFFICE
                            Raul A. Ruiz, AUSA
                            Meghan Loftus, AUSA
                            2100 Jamieson Avenue
                            Alexandria, VA 22314

Also Present:               Jannika Canon, Esquire
                            Department of the Navy

Court Reporter:             Diane Salters, B.S., CSR, RPR, RCR
                            Official Court Reporter
                            United States District Court
                            401 Courthouse Square
                            Alexandria, VA 22314
                            Email: Dianesalters.edva@gmail.com
                            Telephone: (301) 338-8033


Proceedings reported by machine shorthand.  Transcript
produced by computer-aided transcription.

*Proceedings*

THE COURTROOM DEPUTY:  Civil action 2025-831, *Kristina Glines v. Department of Defense, et al.*  Counsel, please note your appearances for the record.

MR. SANDER:  Good morning, Your Honor.  Robert Sander.  I represent Mrs. Glines to the right of me.

THE COURT:  Good morning.

MR. RUIZ:  Good morning, Your Honor.  Assistant United States Attorney Raul Ruiz for federal defendants.  I'm joined by my colleague, Assistant United States Attorney Meghan Loftus, and agency counsel for the Department of the Navy, Jannika Canon.

THE COURT:  Good morning to you all.

This matter comes before the Court on Defendants' partial motion to dismiss the amended complaint, which is Docket Entry 33.  There's extensive briefing in this matter, and the Court has reviewed the materials -- the motion, memorandum, opposition, reply brief.  I will hear some argument on this this morning, but I think the Court's had the opportunity to see, in writing, the position of the parties.  And, of course, this comes on a motion to dismiss, and the Court will apply the appropriate standard and accept the allegations in the complaint as true for purposes of this motion.

MR. RUIZ:  Good morning, Your Honor.

Defendants are here today asking for dismissal of all

*Proceedings*

counts except 3 and 4, and I'll be brief.  I want to focus the Court's attention on the core of this complaint.  As Your Honor mentioned, there's extensive allegations.  By my count, there's 16 claims within these seven counts, but working backward from the prayer for relief and a lot of the whereas and wherefore clauses within these counts, the core of Plaintiff's case is that she wants reinstatement in her position and to regain access to the Department of the Navy's Special Access Program.

Focusing on claims that derive from that relief, these are various due process claims that relate to this indefinite suspension that was first proposed and then enacted.  And in terms of the counts here, this would touch on the Title VII claims for discrimination, APA claims, the ADEA claim for age discrimination.

So starting here, I would reiterate for the Court, as the Court must have seen in the papers, that there's timing issues, there's failures to exhaust here, and I would point to a key date being that an EEO complaint was filed here in April of 2023, and the origin of a lot of the claims here come from that EEO complaint.  The plaintiff chose this route as a mixed case complaint, meaning that there are claims within this EEO complaint that are destined or can be appealed to the MSPB because they relate to this adverse action, the indefinite suspension from duty that resulted from the suspension of SAPs access.

*Proceedings*

The biggest issue in timeliness here and exhaustion is that Plaintiff never appealed this agency final decision on these mixed claims.  Plaintiff claims that she filed for an EEOC hearing, however, the regulations here clearly require an appeal to the MSPB, and that has not been done.  Plaintiff has pointed to a savings clause, and that is at 5 U.S.C. 7702(f), however, that savings clause does not help Plaintiff here.  That hearing before the EEOC was only requested as to the unmixed claims, those that are not related to the suspension from duty.

Secondly, that statute requires an eventual filing before the proper agency, and there hasn't been any filing with the MSPB.  And since that final decision on those mixed claims came in November of 2023, by filing in the D.C. court in April of 2024, Plaintiff waited 160 days to bring these claims.

I would also point -- and I had promised to be brief -- the other main impediment to granting relief for this core of Plaintiff's case is the Supreme Court's precedent in *Egan*.  At its essence, this complaint is asking the Court to review the merits of that suspension of SAPs access, and SAPs access is a national security determination.  It provides access to top secret documents within the Department of the Navy, and *Egan* bars -- it does not provide a jurisdiction for that, and it also extends to the employment decision derived from that suspension, as clear Fourth Circuit precedent holds

Proceedings

in *Campbell*.

My last point here is that Plaintiff has pointed to *Jamil*, a Fourth Circuit case that Plaintiff is using as a door to say they can challenge any type of procedural anomaly in the entire adjudication or decisions around the security clearance, however, *Jamil* is more constrained than that.  It's not an open door.  What it allows is challenging procedures when it's wedded to an adverse employment action; in this context, being the suspension from duty.  And the essential thing here is that CSRA procedures are available to do that, and Plaintiff has not exhausted those CSRA channels as to those claims, so *Jamil* would not allow the Court to review just procedures and any procedure anomaly coming out of that.

And unless the Court has other questions on the other claims, we'll rest on our briefs.

THE COURT:  Thank you.

MR. SANDER:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. SANDER:  Your Honor, I believe we're here for a 12(b)(1) and a 12(b)(6) motion, however, in the government's memorandum of law, they alleged a 12(c), so I want to make sure that we're still on the 12(b)(1) versus the 12(b)(6) because there was no answer given in this case, as a procedural matter, so I just wanted to raise that with the Court.

Your Honor, we're here today on this motion to

Proceedings

dismiss, however, the government's position in this matter is that *Egan* is a bar is a misstatement.  And as you read Justice Blackmun's decision in *Egan*, he specifically says that the Merits System Probation Board cannot review the substantive merits.  *Egan*, and within Egan itself, they also go on to say that everything needs to be done proper, whether that's notice, the opportunity to be heard, the review of the investigative file and discovery, et cetera.  None of that has been done in this matter.  Ms. Glines still has not seen discovery from the initial SAPs suspension.  She still hasn't seen the investigative file.  As we continue to move forward with this case, as it made it to the DoD level with the Consolidated Adjudicated Services, in their note -- in their statement of reasons, they said Mrs. Glines would be entitled to it, however, we needed to request it under FOIA, and we still haven't received any of that discovery.  So there's numerous procedural irregularities here.

That's on top of the Department of the Navy not forwarding this properly to the DoD CAS for adjudication over 14 months.  They intentionally kept it at the agency level so it would never get a review; and if you don't get a review by the CAS, it's a clear violation of procedural due process. They specifically kept it there so nobody could see what's behind the curtain and what was behind Mr. Howe's and the Navy's actions in this matter.  We still don't have it.  We've

*Proceedings*

requested matters under FOIA. We've been blocked that way, and that's part of what happened in D.C. federal court. We were told to expedite it by one of the defendants themselves, and the other defendant said, No, we won't expedite it. What we found out later, through part of the FOIA analysis, was that the Navy never had a package to begin with put together on this matter because they did it off of verbal allegations before the investigation was even complete.

Then what ended up happening was, when the Justice Department came along and the Office of Government Ethics, and they said, There's no there or there, the Navy didn't reverse course; they doubled down going even further. Then through the FOIA documents, we find out NCIS, the Navy's own Criminal Investigative Service, said there was no there or there. Then later we get the legal opinion that comes out from the Navy general counsel's office themselves that, under the statute 18 U.S.C. 208(b), is a waiver. It precludes them prosecuting Ms. Glines for anything that a separate agency counsel now said she did wrong. It's right in the statute.

This whole time, they also base their allegations off of a violation of the DCIS agent's findings, which he is not allowed to make under DoDM violations. We're not even quite sure he was the one that did make it. I personally think that it was Mr. Howe who made that because it was unclear in the report of investigation, but they're not allowed to do that

*Proceedings*

under the DoDM.

And then, officially, they make up a legal standard, "culpability established," which is nowhere in the MSPB, the EEO, or the security guide violations -- or regulations. And now what the government wants you to do is to accept those violations of regulations and statute and say you are barred from reviewing this matter procedurally under *Egan* at all, which is not the holding of *Egan,* it's not the holding of *Jamil*, it's not the holding of *Mallory* or *Cruz*, which are all Fourth Circuit cases. *Mallory* even goes on to say, And even if these violations of regulations were not raised by plaintiffs, the Court can still review them.

For those reasons, we would ask that the motion to dismiss be denied.

Additionally, though, Your Honor, I also wanted to raise something additionally; it was about exhaustion. Exhaustion, we did comply with the Department of the Navy's notice, filing an EEO. We complied with all the dates, but regardless, exhaustion is not a jurisdictional argument. It's also an affirmative defense, and it's not appropriate for a 12(b)(1) or 12(b)(6) motion to dismiss.

With that, Your Honor, if you have any additional questions, I'm glad to answer them, but I think those are the big two that we just wanted to raise with the Court and discuss.

THE COURT:  Let me just ask you as a general matter: The government's argument really, in essence, is -- although there are a lot of different claims here -- that what you're trying to do is to get this Court to look behind the decision to suspend the SAP access, which is really a clearance issue. Is that not what you're asking the Court ultimately to do?

MR. SANDER:  No, Your Honor.  You can't review the merits.  That's clear under *Egan.*  At least the MSPB can.  It's never been determined whether a federal district court judge would be able to review that under an ADA claim or something along those lines.

As you know -- as Your Honor knows, you have special status with security clearances, which is part of your confirmation process, so I would argue it's a different process.  But we are not asking the Court to look at this under the merits.  What we're doing is asking you to look at the procedures, and we're also saying this is a fundamental violation of regulation, statutes, the Constitution that the government wants Ms. Glines to respond to this without ever showing what the investigative file is or what their discovery is or what they relied upon.

THE COURT:  I guess I'm having a little bit of a hard time understanding what the claim is here.  I thought the claim was that, right now, she's in an unpaid, inactive status, correct?

*Proceedings*

MR. SANDER:  Yes, correct.

THE COURT:  She hasn't been fired, so you're not alleging termination, but you're alleging, essentially, a suspension of her pay and her ability to work; is that right?

MR. SANDER:  Correct.  There's multiple different processes that are taking place here, and it is very confusing, Your Honor, and the Supreme Court has cited that it's a Byzantine process.  So, yes, Your Honor, we had to do a lot of work getting here.

There's various different things here.  One is her inability to work due to her SAP access suspension that Mr. Howe did on his own.  There's also a security clearance access that is still making its way through the DoD CAS, and we have not even been able to respond to that yet because they haven't given us what they've relied upon in the investigative file.  They sent us into this FOIA paradigm, which is in contradiction to the EEO and the DoDM and the Constitution, and said, Hey, we're not going to give you the investigative file that we relied upon even though it says it right here; you go request it under FOIA under an expedited manner, which we did. We said, We think you're wrong, we think you owe it to us, but we're still going to request it because if we get it within ten days, no big deal.  And then what ended up happening was, Judge Chutkan didn't make a decision for a year; the expedition passed.  We still haven't gotten those 54 documents that they

*Proceedings*

replied upon so we can provide a proper response to the CAS on that security clearance matter.

And then, additionally, we also have the EEO and the personnel action which was filed properly under the EEO. So there's kind of three actions all working simultaneously, Your Honor, and it is very convoluted, but we've never asked the Court to review the merits. We've asked the Court to review this procedurally. We've asked the Court to throw it out because they've sat on it, because they've violated the regulations numerous times, and the government has never in any of their filings averred that they've complied with the regulations. Every one of their filings has been, Ms. Glines did not do X, Ms. Glines did not do Y, Ms. Glines did not do Z. There's not been one time that the government has said, We've done it correctly, anywhere. They picked and chose little bits, but they've never said that they've done it right. They've tried to put it back on us. It's their burden to get it right from the beginning even though it's our burden here at this hearing. But if you read *Egan*, there's no aversion, much less any evidence that they complied with the substantive portions of *Egan*. And now they say, Just throw it out. If that's the case, the whole exception where courts or MSPB or nobody can review a procedural matter under *Egan,* we're going to continue to get that they just suspend security clearances, they throw away the key, they do nothing, and then they put

people in limbo for three years -- in Ms. Glines' case -- where nothing happens to them.  And then they get you to quit versus having to face it in federal court or the MSPB or the EEO, whatever route they require the defendants to take in these matters, and switches over to the plaintiff.  But that's what we're arguing, Your Honor, and that's what we're asking the Court for; not to review the substance of the merits.  I know the government has averred that twice that that's what we're asking for.  We're asking you to look at it procedurally, and that's the big difference here, and there's numerous violations to the procedure just on the face that they didn't forward this for 14 months.

THE COURT:  But you never invoked the CSRA and pursued that claim through the administrative law judges or the MSPB; is that right?

MR. SANDER:  No.  What we did, Your Honor -- in the defendant's own notice, they say you can pursue this matter under the MSPB or the EEO.  And they ignore that part. Ms. Glines complied and pursued it under the EEO.  She's complied with all that law.  Now they come back and say, Well, you should have gone to the MSPB anyway.  The MSPB doesn't have any jurisdiction over security clearance matters.  They don't have any jurisdiction over FOIA matters.  They don't have any jurisdiction over the Privacy Act.  That's in the statute. That goes right to federal court.  They don't have jurisdiction

*Proceedings*

over the APA, which says you get jurisdiction on a failure to act by the government.  They failed to act for 14 months, even thwarting this matter.  Now what they do is say, No, no, no, just needs to go to MSPB.  We went to the EEO under mixed and non-mixed claims, and now they're saying, Well, ignore our notice that told you to do that; you should have gone to the MSPB.  And then, Oh, after you went to the EEO and you filed with them, now we give our partial final agency decision after you file, when the EEO already had jurisdiction on this matter and says, Oh, now you need to go to the MSPB.  It's like three-card monte where they keep moving everything around, and it's incorrect legally, it's incorrect factually.

THE COURT:  Thank you.

MR. SANDER:  You're welcome, Your Honor.

MR. RUIZ:  Your Honor, I have four points to respond to.  The first thing is that Plaintiff's counsel says that Ms. Glines did not receive a packet or the files from the investigation, there's procedural anomalies here, but she was given the MSPB right.  She was given the right to appeal to the MSPB through the mixed complaint that was filed, and she was provided the materials for the proposed indefinite suspension that came along with the SAPs access.

Plaintiff has pointed a lot to one of the documents that they're seeking through the FOIA claims that are not at question here that we're not challenging here today as the

14

report of investigation from the DCIS, but that report was not in existence when the proposed suspension occurred or the suspension from SAPs.

The second point is that, as Plaintiff did point out, the adjudication for the security clearance is still ongoing and it's currently stayed, so that's not a delay; it's stayed because of this litigation and at Plaintiff's request.

And Plaintiff claims that -- and Plaintiff's counsel claims that *Egan* and *Jamil* and these cases would give the Court the jurisdiction to review these procedures, not the merits, but I think it's clear that there is no due process, a property interest in a security clearance.  That's stated in *Jamil* and in all of its progeny and *Egan*.  And these cases -- that means that there is no -- as I mentioned in my opening presentation, there's no open door to just challenge any procedure whenever an anomaly comes up.  And in this case, there were CSRA channels, there was a failure to exhaust, no appeal, so to point to regulatory constitutional violations here is not appropriate.

And Plaintiff mentioned the other claims.  If Your Honor has questions on those claims, it's true that some of those claims are not tied to the mixed complaint -- for example, the APA claims, the Privacy Act claims -- but those, in our briefs are addressed for failure to state a claim, although we would say they are attempts at getting at the same

rewriting of these procedures.  And the reason a lot of those claims fail is because they are trying to rewrite agency assessments or to correct the assessments of these entities.

THE COURT:  Thank you.

I think I've heard sufficient argument on this matter, and as I noted, this has been thoroughly briefed, and the Court has had the opportunity to review the materials here.

This matter comes before the Court on Defendants' motion to dismiss for lack of jurisdiction and failure to state a claim, and it's ECF 33 and 34.  Having considered the submissions of the parties, the amended complaint, the applicable law, I will grant the Defendants' motion to dismiss Counts 1, 2, 5, 6, 7, 8, and 9 of the amended complaint.

First, as to the Title VII claim in Count 8 and the ADEA claim in Count 9, these cannot be reviewed without examining the suspension of Plaintiff's Special Action Programs access and indefinite suspension of pay and duty predicated upon the suspension of the SAP access; and, accordingly, the Court is prevented from reviewing Counts 8 and 9 as a result of *Egan* and its progeny.  And even if they were not entirely precluded by *Egan*, this Court lacks jurisdiction over any part of Counts 8 and 9 arising out of the Navy's November 17, 2023, final decision addressing her mixed claims because she failed to exhaust those claims before the MSPB, as required by 29 CFR § 1614.302(d)(3).  The Court also lacks jurisdiction

over any part of Counts 8 and 9 regarding the October 12, '22 suspension of Plaintiff's SAP access because she failed to timely contact an EEO counselor within 45 days to challenge this action.  And further, Counts 8 and 9 fail to state a claim on the merits, and they will be dismissed with prejudice.

Second, as to Counts 1, 2, and 6, these claims concern due process challenges to Defendants' adherence to regulations in taking adverse personnel action.  The CSRA precludes this Court's review absent exhaustion before the MSPB, which Plaintiff failed to accomplish in this case.  And I don't find that the *National Association of Immigration Judges*, recent case, excuses exhaustion of these claims before the MSPB here. It simply is a different circumstance, does not involve the Office of Special Counsel, and is not applicable.

I further find that Count 6 fails to state a reputation plus claim.  The alleged statements were neither public nor does the plaintiff show that she cannot gain employment in her field, and so, therefore, Counts 1, 2, and 6 will be dismissed without prejudice as to the challenge to procedure and with prejudice as to the reputation plus claim in Count 6.

Third, as to the APA claim in Count 7, this claim challenges the implementation of Plaintiff's indefinite suspension, the Howe memorandum, the DCIS report as contrary to regulations.  As with Counts 1, 2, and 6, the CSRA precludes

this Court's review of challenges to procedure.  To the extent that Count 7 challenges the substance of the revocation of Plaintiff's SAPs access and her indefinite suspension, the Court lacks jurisdiction because of *Egan*.  The Court also lacks jurisdiction over the challenge to the DCIS report because the APA does not permit review of criminal investigatory or prosecution decisions.  Count 7, lastly, fails to state a claim as to the Howe memorandum and the DCIS report because these are not final agency actions.  Count 7 is, thus, dismissed without prejudice as to the challenge to procedure and with prejudice otherwise.

Finally, as to Count 5, these claims concern three alleged Privacy Act violations.  The first claim contends that discrepancies with a FOIA tracking number and declarations in the D.C. District Court resulted in that court dismissing her FOIA claims and requests litigation fees and costs and a retraction of the declarations.  The claim fails to state a claim for relief.  The D.C. District Court never dismissed her FOIA claims, but, rather, denied her motions for preliminary injunction requesting that Defendants be compelled to respond to her FOIA request within 20 days.  Plaintiff cannot establish proximate causation.  The district court denied the preliminary injunction considering the full array of *Winter* factors, and there's no basis to find the outcome would have been different absent any misstatement by Defendants.  Further, a declaration

18

Proceedings

prepared for litigation purposes does not fall within the ambit of the Privacy Act.

The second and third claim contend that DoDIG-DCIS' report and Howe's "culpability established" memorandum were disseminated despite being inaccurate and incomplete. These claims request fees and costs and retraction, the scrubbing of inappropriate conclusions from the DCIS report and Howe memorandum.  These claims fail to state a claim for relief because the Privacy Act may only be used to correct facts, not rewrite opinions or assessments.  Accordingly, Count 5 will be dismissed with prejudice.

I've granted the defendants' motion, and Counts 3 and 4 of the amended complaint remain, as they were not challenged by the government.

Is there anything else I need to address with regard to this matter this morning on behalf of the government?

MR. RUIZ:  No, Your Honor.

THE COURT:  On behalf of the plaintiff?

MR. SANDER:  No, Your Honor.

THE COURT:  Thank you very much.  Court will be in recess.

*     *     *     *     *

CERTIFICATE OF REPORTER

I, Diane Salters, hereby certify that the foregoing transcript is a true and accurate record of the stenographic proceedings in this matter.

/s/ Diane Salters

_____

Diane Salters, CSR, RCR, RPR
Official Court Reporter